69

Lawrence A. Faccenda,
Adm'r
vs.    No. 34355
The Rhode Island
Company

January 10, 1918

BLODGETT, J.   Motion for new trial.

After verdict of the jury for defendant, plaintiff filed a motion for a new trial on the following grounds:

1st.  That said verdict is contrary to the evidence and the weight thereof.

2nd.  That said verdict is contrary to the law.

3rd.  That the special finding of the jury is against the evidence and the weight thereof.

4th.  That the said plaintiff has discovered new and material evidence, in said case, which he had not discovered at the time of the trial thereof and which he could not with reasonable diligence have discovered at any times previous to the trial thereof, as by affidavits to be filed in court will be duly set forth, said affidavits being made a part of the motion.

5th.  That the verdict of the jury fails to administer substantial justice to the parties in the case.

At the hearing plaintiff abandoned the fourth ground, relying upon the remaining four.

The testimony in the case occupied the attention of the Court and jury for several days and a view of the location of the accident was taken and also of the car involved. The case had been carefully and thoroughly prepared by counsel for both sides, and as the same had been presented at three previous trials, resulting in a disagreement by three juries, all the testimony that could be produced

70

was very well known to counsel.

The plaintiff, an Italian, not very long in this country, got upon a North Main Street car, and near the Court House of the Sixth District Court on North Main Street, terrified by an explosion in the front vestible, jumped off the car and was severely injured. The plaintiff's intestate died some six months after the accident and it is contended that the death was due to the accident.

The car was a closed car of the older type.

The main contentions of the plaintiff were:

(1)  That the explosion occurred in the controller owing to lack of proper inspection and to the fact that verdigris had collected upon fingers of the same, causing a short circuit, and that this condition was due to neglect of defendant's employees.

(2)  That the motorman was negligent in failing to stop the car by means at his command in time to prevent a terrified passenger from jumping off the same while in motion.

(3)  That the car was allowed to travel at a very rapid and dangerous rate of speed.

(4)  That the trolley arm of the car was out of repair through negligence on the part of the Company and could not be held off the trolley wire.

(5)  That the conductor was negligent in not taking proper means to stop the car and in failing to attempt to prevent terrified passengers from jumping off the car while in motion by every means in his power and as required by the rules of the Company.

The contentions of the defendant were:

(a)  That the explosion did not take place in the controller but in that part of the car, under the body, where the motors are located; that the cause of the explosion was the breaking of a spiral spring in the brush holder of one of the motors,

causing an arc to the motor case, and that this extended to the controller causing the burning out of the same and creating such an intense flame as to shoot up through the metal casing of the controller, melting some of the controller fingers and part of the casing; that the breaking of this spring was an accident pure and simple which could not have been foreseen; that the duty of inspection on the part of the Company had been performed by it in accordance with the highest state of the art as known and practised on the best conducted electric car companies, and that in the purchase of its equipment it had used the highest degree of care in obtaining the same from the best known and skilled manufacturers in the country in such lines.

(b) That the motorman used every means in his power to stop the car as soon as possible.

(c) That the trolley arm was not out of repair and was removed by the conductor as soon as the explosion occurred.

(d) That the conductor used all means in his power to warn the passengers not to jump off the car until the same stopped.

(e) That the car, after the explosion, was not traveling at a rapid rate of speed, and was brought to a stop as soon as possible.

The accident having happened by reason of an explosion, the doctrine of "res ipsa loquitur" applied and it devolved upon defendant to account for such an unusual event. This the defendant attempted to do as shown above under sub-paragraph (a). In this connection this special finding was submitted to the jury—"Could the trouble which caused the breaking of the spring have been detected by any reasonable and practical inspection," to which the jury answered "No."

There was much expert testimony upon the question as to where the trouble started. In this trial the plaintiff relied upon testimony given at a former trial by an electrician named Duffy, to satisfy the jury that the explosion occurred by reason of verdigris collected upon the fingers of the controller and through "lagging" by the motorman between notches of the controller. The defendant produced several experts practically engaged in the management, maintenance and inspection of electric car systems, in different sections of the country, who all attributed the cause of the explosion to this broken spring as the starting point of the trouble, and who all agreed that the inspection testified to by the various employees of the defendant as given to the motors and controller of the car in question was a reasonable, proper and adequate inspection, and that the defect in the spring could not have been discovered. This matter was thoroughly discussed and submitted to the jury, and the answer of the jury upon the special finding submitted to them would seem to point to the fact that they were satisfied the explosion originated in the motors and not in the controller. The Court cannot say that the verdict of the jury was against the weight of the evidence in this particular since the opinion of men who had devoted their time to the practical care and operation of electric car systems was contrary to the opinion of an electrician who had given but a small portion of his time to such practical care and operation, however skilled he might be in other departments of electrical science.

If the conclusion be reached that the explosion originated in the motors, and was one which the defendant by the use of the highest degree of care could not have foreseen, and was not caused by faulty conditions in the controller, then the question as to due care on the part of the motorman and conductor arises.

There is testimony that following, or almost instantaneously with the explosion, a fan shaped flame shot out of the top edge of the controller box, accompanied by intense heat. It became the duty of the motorman to throw off the power and to stop the car as soon as possible, and to accomplish this by the means at hand. This question was submitted to the jury and by its verdict for the defendant it must be regarded that the jury came to the conclusion that the motorman did use all means in his power under the circumstances to stop the car. No witnesses were in a position to testify as to what the motorman did except himself, and the only testimony to refute him would be inferential from such circumstances as the speed of the car, the motion of the car, the distance traveled, etc. Upon all these details there was testimony pro and con, and the Court cannot say that the jury so disregarded the weight of the evidence that the verdict should be set aside in this respect.

As to lack of due care on the part of the conductor there is evidence that the trolley arm was removed from contact with the trolley wire very soon after the explosion and so remained until the car came to a stop. The plaintiff's intestate has never testified as to the conduct of the conductor and the conductor himself testifies that he warned the deceased to wait until the car stopped. There is conflicting testimony as to the manner in which deceased got off the car, and the Court cannot say the verdict of the jury was against the weight of the evidence in this respect

The ground "that the verdict of the jury fails to administer substantial justice" remains to be considered.

To this matter the Court has given careful consideration. If the deceased had remained in the car there was no personal danger involved to him. The happenings while no doubt

73

disturbing to the mind of a passenger within the car were not in themselves dangerous to life. They were such as to excuse action in the part of a passenger who feared personal danger to get as soon as possible to a place regarded as safe, and were sufficient to compel the defendant to make a satisfactory explanation as to the cause of the explosion and its use of the highest degree of care to avoid it. Such an accident does not appeal to the Court as would one occurring to a passenger who has no chance to avoid it, such as a collision or derailment, and there is in the present case such a conflict of testimony that the Court does not feel it should set aside the verdict of the jury upon this ground.

Motion for new trial denied.

For plaintiff: John P. Brennan & T. W. Gilchrist.

For defendant: Clifford Whipple & A. R. Williams.